```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION

BRANDON LADD,                         :

     Plaintiff,                       :

vs.                                   : CIVIL ACTION 12-0107-WS-M

COI BARTON,
                                      :
     Defendant.
```

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis* filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendant's motion for summary judgment (Docs. 11, 12). For the reasons stated below, it is recommended that Defendant's motion for summary judgment be granted and that Plaintiff's action be dismissed with prejudice.

I.  SUMMARY OF FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

From its review of the record, the Court summarizes the procedural history and the parties' allegations that are material to the issues addressed in this Report and Recommendation. On or about January 30, 2012, while incarcerated in the Holman Correctional Facility ("Holman"), Plaintiff was in the dining hall eating a piece of cake and he

proceeded to walk out of the kitchen (Doc. 1, p. 3; Doc. 18).[1] Defendant Correctional Officer Derrick Barton ("Defendant") was in charge of conducting security searches at the exit door of the kitchen at that time (Doc. 12-1, p. 1). Defendant saw Plaintiff attempting to leave the kitchen and told Plaintiff that he could not leave the dining area with the cake (Doc. 12-1, p. 1). Plaintiff continued to walk out, and Defendant again told Plaintiff to not walk out of the dining hall with the cake (Doc. 12-1, p. 1). Defendant told Plaintiff he could not leave with the cake, but Plaintiff disregarded Defendant's order for a third time and continued to walk out of the kitchen (Doc. 12-1, p. 1)[2]. Next, Defendant placed Plaintiff in a chokehold (Doc. 18, p. 2). Plaintiff asked Defendant to turn him loose (Doc. 18, p. 2; Doc. 12-1, p. 1). Defendant turned Plaintiff loose (Doc. 18, p. 2).

However, Plaintiff again proceeded to exit the area with the cake (Doc. 18, p. 2). Defendant grabbed Plaintiff by his

---

[1] The Court notes that Plaintiff's facts set forth in his Complaint (Doc. 1) and his Response (Doc. 17) differ from each other. Of the conflicting facts, the Court takes the facts that color the situation more in favor of the Plaintiff as the events that occurred on the date of the incident. However, where Defendant's facts are uncontroverted by Plaintiff, they are also considered facts for purposes of this Report and Recommendation.

[2] Plaintiff does not dispute in his Response that Defendant warned Plaintiff multiple times to not leave the premises (see Doc. 18).

jacket (Doc. 18, p. 2).  Next, Plaintiff turned around in a threatening manner (Doc. 12-1, pp. 1-2).  Defendant thought that Plaintiff was going to assault Defendant (Doc. 12-1, p. 2). In reaction, Defendant proceeded to administer a brachial stun strike to the left side of Plaintiff's neck (Doc. 12-1, p. 2; *see* Doc. 18, p. 2).  Plaintiff continued to be aggressive towards Defendant even after being struck (Doc. 12-1, p. 2). Defendant placed Plaintiff in chokehold[3] and dragged Plaintiff down the hall (Doc. 12-1, p. 2; Doc. 18, p. 2). Defendant then released Plaintiff from his grip and stopped use of all force as soon as Plaintiff stopped resisting Defendant, which was when they had reached the main hall (Doc. 12-1, p. 2; Doc. 18, p. 2).[4] Next, Officer Jones arrived and stepped in front of Defendant Barton and placed Plaintiff in a holding cell (Doc. 1, p. 5; Doc. 18, p. 2).  Shortly after being placed in the holding cell,

---

[3] Plaintiff states in his Response that Defendant physically assaulted and verbally assaulted him, but does not explain how he was assaulted and what words were said at that time (*see* Doc. 18, p. 2).

[4] Plaintiff states in his Complaint that Defendant "Threw up his fist" and said, "[C]ome on what you wanna do let's go." (Doc. 1, p. 4).  However, this action and use of words does not constitute actual use of force, and does not support Plaintiff's excessive force claim.  Defendant's affidavit contradicts this fact in that Defendant does not outline this exchange in his outline of the facts (*see* Doc. 12-2).  Also, Plaintiff does not contradict and/or reiterate this particular exchange in his Response (Doc. 18).

Plaintiff suffered from a seizure (Doc. 1, p. 5; Doc. 18, p. 2). An ambulance was called and arrived before a body chart could be completed (Doc. 12-2). A body chart was completed the next day, and it reflected that there were no bodily injuries to Plaintiff (Doc. 12-2, p. 3).

The medical records reflect that Plaintiff suffered from seizures frequently prior to the incident on January 30, 2012 and that he did not take his seizure medicine as instructed on a regular basis (*see* Doc 12-3, pp. 1-2, 4, 6, 35, 42; Doc. 12-4, pp. 1-2, 4, 19, 26, 28-29, 36, 38, 41-42, 46; Doc. 12-5, p. 5, 12, 14, 18, 20-21, 34, 36-37; Doc. 12-6 pp. 2-3, 12, 16; Doc. 12-7, pp. 1, 7; Doc. 12-2). Also, the medical records show that Plaintiff's seizures were not triggered by outside events, but occurred even while Plaintiff was sleeping or merely sitting in a cell, in addition to when he did not take his medication (Doc. 12-3, p. 47 (seizure while in bed); Doc. 12-4, pp. 13-14 (seizure while sitting in bed), 18 (seizure in cell), 36 (seizure because Plaintiff did not take medication); 38 (sudden onset of seizure); Doc. 12-5, pp. 12 (seizure while asleep), 18 (seizure while trying to get out of bed), 20-21 (sudden seizure due to non-compliance with taking his medication), 34 (seizure while asleep), 36-37 (seizure triggered by not taking medication)). Also, Sylvia Hicks, the Director of Nursing at Holman, stated in her affidavit that Plaintiff had frequent

4

seizures and did not take his seizure medication as prescribed (Doc. 12-2). She states that Plaintiff had multiple seizures in 2011 precedent to the incident date on January 30, 2012, specifically on the following dates: February 28, March 10, March 31, June 27, August 9, August 15, September 25, October 19, November 19, November 26, and December 24 (Doc. 12-2). Also, she notes that Plaintiff missed pill call on the following dates in 2012, immediately prior to the incident date: January 16, 17, 18, and 24 (Doc. 12-2). Plaintiff's medical records attached to his Response reflect that Plaintiff did not suffer any bodily injuries from the incident (Doc. 18, p. 10) and that his seizure on January 30, 2012 was a result of his seizure disorder itself and his own "medication non compliance" (Doc. 18, p. 14).

Plaintiff filed his Complaint on February 22, 2012 wherein Plaintiff alleges that Defendant Barton knowingly and willingly used excessive force and caused him injury (Doc. 1, p. 4). Plaintiff requests a jury trial and $100,000.00 for pain and suffering, mental anguish, and emotional stress (Doc. 1, p. 7).

On June 16, 2012, Defendant filed an Answer and Special Report denying Plaintiff's claims and asserting affirmative

defenses[5] (Docs. 11, 12).  On June 22, 2012 the Court ordered that Defendant's Special Report and Answer be treated as a motion for summary judgment (Doc. 13).  Plaintiff filed his Response on August 20, 2012 (Doc. 18).[6]  Plaintiff's pleadings and Defendant's motion are now before the Court.

## II.  SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  It is well-established that summary judgment is proper-consistent with Federal Rule of Civil Procedure 56(c)-"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[5] Defendant sets forth various immunities as affirmative defenses. However, since the Court finds herein that Plaintiff's allegation of excessive force does not establish a constitutional violation, there is no need to make further inquiry as to immunity.

[6] The Court previously entered a Report and Recommendation (Doc. 17) without considering Plaintiff's Response since the date for filing a Response had passed as of August 17, 2012. However, Plaintiff signed his Response on August 15, 2012 and mailed it on August 17, 2012 (*see* Doc. 18, pp. 7, 16), even though the Court did not receive it until August 20, 2012. Therefore, the Court withdrew its previous Report and Recommendation in order to consider Plaintiff's Response (*see* Doc. 20).

any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989). However, Rule 56(e) states that:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> > (1) give an opportunity to properly support or address the fact;
> > (2) consider the fact undisputed for purposes of the motion;
> > (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> > (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party

7

will bear the burden of proof at trial.'" *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

### III.  DISCUSSION

As set forth above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising out of an altercation that occurred on January 30, 2012, while Plaintiff was incarcerated at Holman Correctional Facility. Section 1983 provides in pertinent:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).  For the reasons set forth below, the Court finds that Plaintiff's allegations fail to establish any constitutional violation by Defendant.  Therefore, it is recommended that Defendant's motion for summary judgment be granted.

As discussed above, Plaintiff claims that Defendant Officer Barton used unnecessary and excessive force by grabbing Plaintiff's jacket, striking him, putting him in a chokehold and

8

applying pressure, and dragging him down the hall, which the Court construes to mean that the Plaintiff claims an Eighth Amendment violation (Doc. 1, pp. 3-5).

The Eighth Amendment protects a prisoner from punishment that is cruel and unusual. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, . . . the infliction of pain totally without penological justification . . . , [and] the infliction of punishment grossly disproportionate to the severity of the offense." *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).

In order to establish an Eighth Amendment claim, a plaintiff must prove both an objective and subjective component. First, Plaintiff must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, and, second, Plaintiff must show that "the officials act[ed] with a sufficiently culpable state of mind," *i.e.*, that they acted "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-8 (1992). In the prison security context, the factors used to determine whether there has been a violation of the Eighth Amendment are as follows: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, any efforts to temper the severity of a forceful response, and the

9

extent of injury suffered.  *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

> When the "ever-present potential for violent confrontation and conflagration," *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132, 97 S.Ct. 2532, 2541, 53 L.Ed.2d 629 (1977), ripens into actual unrest and conflict, the admonition that "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators," *Rhodes v. Chapman, supra*, 452 U.S., at 349, n. 14, 101 S.Ct., at 2400, n. 14, carries special weight. "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their *322 judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S., at 547, 99 S.Ct., at 1878.

*Whitley*, 475 U.S. 312, 321.

The question for the Court, then, is whether, under the circumstances of this case, a jury could reasonably conclude that Plaintiff's rights under the Eighth Amendment were violated during the incident on January 30, 2012.  The Court answers that question in the negative.

The following facts are constructed from Plaintiff's facts that best support his claim of excessive force and Defendant's facts which have been undisputed by Plaintiff: (1) Plaintiff attempted to leave the kitchen with food; (2) Defendant told Plaintiff three times that he could not leave the kitchen with the food item; (3) Plaintiff defied Defendant's orders three times by continuing to move towards the exit; (4) Defendant stopped Plaintiff from walking out of the kitchen by grabbing

10

Plaintiff and placing him in a chokehold; (5) Plaintiff asked to be released and Defendant released him; (6) upon being released, Plaintiff again attempted to exit the area against Defendant's prior orders; (7) to prevent Plaintiff from exiting, Defendant grabbed Plaintiff by his jacket; (8) Plaintiff turned in an aggressive manner towards Defendant so that Defendant thought Plaintiff was going to assault him; (9) Defendant administered a brachial stun strike to the left side of Plaintiff's neck in response to Plaintiff's aggression; (10) Plaintiff continued to be aggressive towards Defendant even after being struck; (11) Defendant placed Plaintiff in a chokehold and dragged Plaintiff down the hall in response to Plaintiff's aggression; (12) Defendant released Plaintiff once down the hall and when Plaintiff stopped resisting; (13) Officer Jones came and placed Plaintiff in a cell; and (14) Plaintiff had a seizure while in the cell after the incident with Defendant (Docs. 12-1, 18).

    To determine whether there was an Eighth Amendment violation, the Court will evaluate the following: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, any efforts to temper the severity of a forceful response, and the extent of injury suffered. *See Hudson*, 503 U.S. at 7.

    First, the Court turns to whether there was a need for the application of force. In this instance, Defendant applied force

11

since Plaintiff refused to follow reasonable requests, which were given to maintain prison order and to comply with the rules. Additionally, Plaintiff continued to defy Defendant even after being given multiple orders to not leave the kitchen, which escalated the situation to one of hostility (*see* Doc. 12-1, pp. 1-2). Also, even after he had been struck, Plaintiff continued to be aggressive, at which point Defendant, in response, put Plaintiff in a chokehold and took him down the main hall (Doc. 12-1). Therefore, there was a need for an application of force in this instance.

Second, the Court looks at the relationship between the need and the amount of force used. The force used by Defendant was one strike to Plaintiff's neck region, holding Plaintiff's jacket, putting Plaintiff in a chokehold to keep him under control, and moving him down the hall away from the kitchen (Doc. 12-1; Doc. 18). Defendant placed Plaintiff in the first chokehold to prevent Plaintiff from exiting the kitchen, but soon thereafter released Plaintiff (Docs. 12-1, 18). Defendant used force by grabbing Plaintiff's jacket to make the resistant Plaintiff comply with an order given several times (Doc. 12-1, p. 1). Defendant struck Plaintiff in response to Plaintiff's aggression to maintain control in a hostile situation (Doc. 12-1). Also, Defendant placed Plaintiff in a chokehold to prevent Plaintiff from assaulting Defendant and to move Plaintiff away

from the kitchen area (Doc. 12-1, pp. 1-2). Defendant's orders were given, seemingly, to keep the prison routine in place and to maintain control over the disorderly Plaintiff who created a problem and escalated the situation through willful defiance of reasonable orders (*see* Doc. 12-1; Doc. 1).

Third, the Court looks at the threat reasonably perceived. The Court finds that Plaintiff's actions were reasonably perceived as a threat by Defendant in that Plaintiff's behavior disrupted the prison order, purposefully attempted to be unruly, and became aggressive after Defendant attempted to regain control of the situation (Doc. 12-1). Plaintiff's resistant behavior demonstrates that Plaintiff may have intended to escalate the situation to a hostile one (*see* Doc. 18; Doc. 12-1, pp. 1-2). Also, as undisputed by the Plaintiff, Plaintiff himself caused the problem since he ignored Defendant's reasonable orders (*see* Docs. 1, 12-1, 18). Even after being given orders to not leave the kitchen, attempting to leave the kitchen, being placed in a chokehold, and then released by Defendant, Plaintiff proceeded to exit the kitchen area a second time (Doc. 18).

Fourth, efforts were made by Defendant to temper the severity of the forceful response. Defendant requested several times for Plaintiff to not leave the dining area (Doc. 12-1). Also, even though Defendant placed Plaintiff in a chokehold when

13

Plaintiff made his first attempt to exit, he then released Plaintiff shortly thereafter (Doc. 18).  Also, Defendant attempted to prevent Plaintiff from leaving the area by merely grabbing Plaintiff by his jacket on Plaintiff's second attempt to leave (Doc. 12-1).  At that point, Plaintiff turned around in a manner perceived by Defendant as threatening, and in a preventative act of self defense, struck Plaintiff (Doc. 12-1). Even after being struck, Plaintiff continued to be aggressive, and in response Defendant put Plaintiff in a chokehold (Doc. 12-1). Defendant used force merely in response to Plaintiff's defiant and aggressive actions.

    Fifth, the Court considers the injury suffered by Plaintiff as a result of the incident.  Plaintiff claims Defendant's actions caused a seizure (Doc. 1, p 5).  However, there is no evidence that Defendant's actions directly caused Plaintiff's seizure.  Rather, the medical records reflect that Plaintiff suffered seizures frequently in the past years without a trigger, and that they probably occurred more often than not due to Plaintiff's non-compliance in taking his seizure medication (Doc. 12-2; Doc 12-3, pp. 1-2, 4, 6, 35, 42; Doc. 12-4, pp. 1-2, 4, 19, 26, 28-29, 36, 38, 41-42-, 46; Doc. 12-5, p. 5, 12, 14, 18, 20-21, 34, 36-37; Doc. 12-6 pp. 2-3, 12, 16; Doc. 12-7, pp. 1, 7).  Plaintiff suffered a seizure episode on January 24, 2012, six days before the incident, while merely laying in his

bed due to his non-compliance in taking his medication (Doc. 12-4, p. 4). Moreover, the medical record attached to Plaintiff's Response demonstrates that the doctor's diagnosis for Plaintiff's seizure on the date of the incident was due to Plaintiff's non-compliance with taking his medication (*see* Doc. 18, p. 14).

The Court cannot and does not condone physical force used against prisoners if designed for the purpose of causing "unnecessary and wanton infliction of pain." *Ort*, 813 F.2d at 321. At the same time, the Court is keenly aware that prison officials must maintain order and discipline "in an often dangerous and unruly environment." *Ort*, 813 F.2d at 321-22. Prison officials must be extended deference in acting to insure the proper administration, safety, and security of a penal institution. *Id.* "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Id.* at 323. In this instance, the Court finds that Defendant did not use any force on Plaintiff to wantonly inflict unnecessary pain, but merely to maintain order in the prison and to gain control over the unruly Plaintiff who himself had created a hostile situation. Moreover, there is no proof that

Defendant's actions caused Plaintiff's seizure, and Plaintiff does not claim any other sort of injury as a result of the incident.

Bearing in mind all of the factors enumerated above, the Court finds that the force used by the Defendant against Plaintiff was not excessive.  Therefore, Plaintiff's Eighth Amendment claim fails as a matter of law.

## IV.   CONCLUSION

Based on the foregoing, the Court concludes that Defendant Correctional Officer Derrick Barton is entitled to summary judgment in his favor on all claims asserted against him by Plaintiff.  Accordingly, it is recommended that Defendant's motion for summary judgment be granted and that the entirety of Plaintiff's Complaint against Defendants be dismissed with prejudice.  The instructions which follow the undersigned's signature contain important information regarding objections to this report and recommendation.

DONE this 28th day of August, 2012.


                              s/BERT W. MILLING, JR.
                              UNITED STATES MAGISTRATE JUDGE

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.   *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with

16

the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. ' 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. ' 636(b)(1)(A), by filing a >Statement of Objection to Magistrate Judge=s Recommendation= within ten days[7] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party=s arguments that the magistrate judge=s recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    ***Transcript (applicable Where Proceedings Tape Recorded).***  Pursuant to 28 U.S.C. ' 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in

---

[7] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  *Fed. R. Civ. P.* 72(b)(2).

this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.